[No. 39776. Department Two. March 27, 1969.]

E. M. Gostovich, *Appellant,* v. The City of West Richland, *Respondent and Cross-appellant.**

*Butler & Heye* and *Thomas J. Heye,* for appellant.

*Critchlow, Williams & Ryals* and *Rembert Ryals,* for respondent and cross-appellant.

Hill, J.—The city of West Richland published notice of a call for bids for the construction of a sewer system. The

*Reported in 452 P.2d 737.

plans and specifications, on which bids were based, provided *inter alia:*

*1-02. Submission of Proposals.*

. . .

Proposals shall be filed with the Town Clerk, at West Richland, not later than 7:30 P.M. (D.S.T.) Aug 18 1961. Proposals will be opened and read at 8:00 P.M. on the same date at a meeting of the Council. Revisions or withdrawal of Proposals will not be permitted.

The City reserves the right to reject any or all bids; to waive any informalities in the bidding, and to call for new bids if it appears in the interest of the City to do so.

*1-03. Certified Check or Bid Bond to Accompany Proposal.*

As a guarantee of good faith, Proposals shall be accompanied by a Certified Check, or Bid Bond, equal to 5% of the Proposal Amount and made payable to "Treasurer, City of West Richland, Washington." Certified checks, or Bid Bonds, of 3 apparent low bidders will be held until an Agreement has been executed.

. . .

*1-06. Evaluation of Proposals and Award of Contract.*

Following the opening of Proposals, the City will study and evaluate same and decide as to the advisability of awarding a contract. Prior to execution of an Agreement, the City will have to secure approval from the U. S. Public Health Service, and it is anticipated that it will be at least 30 days before an actual Agreement can be signed. The City reserves the right to hold all proposals as binding for a period not to exceed 60 days after opening of bids.

(Exhibit No. 10)

E. M. Gostovich, a contractor with experience in the business of constructing sewer and water lines, timely filed his sealed bid together with a performance bond in the sum of "five per cent (5%) of total proposal price" executed by a corporate surety.

Five bids had been received at the time and place indicated in the invitation. The Gostovich bid of $286,044.72 was low, but considerably above the "fair cost estimate"

of $258,875.76 which had been made by Thompson & Westin, the engineering firm employed by the city for this project.

Pieler Construction Company (hereinafter referred to as Pieler) had mailed a bid from Seattle (postmarked 5 p.m. August 17, 1961) in the amount of $273,654.05, which was not received by the city until Monday, August 21, 1961. By due course of mail this bid should have reached West Richland in time for the bid opening.

The city decided that the late arrival of the Pieler bid was an informality that could be waived and, at a council meeting on August 25, opened the bid. Mr. Gostovich was present at this meeting and protested the opening and consideration of the Pieler bid. On the following day a letter of protest was mailed by Mr. Gostovich to the city calling specific attention to the fact that all proposals were to "be filed with town clerk at West Richland not later than 7:30 P.M. (D.S.T.) August 18, 1961."

The city did not award the contract to Pieler until November 7, 1961, and then for a contract price of $263,246.98 (some $10,000 under the low bid submitted by Pieler). On November 10,[1] Mr. Gostovich was notified that the contract had been signed and his performance bond was returned to him.

In the period intervening between the opening of the bids on August 18 and November 10, there were three significant dates. On September 12, the city council adopted a resolution reciting that the contract would be awarded to Pieler on the basis of its bid "subject to the conditions hereinafter set forth."[2]

---

[1] All dates referred to herein were in 1961, unless specifically indicated.

[2] ". . . [A]pproval by the Surgeon General of the United States; 'the minor deletion of certain bid items to be worked out between the Town's Consulting Engineers and the Contractors'; compliance with insurance and bond requirements; final disposition, favorable to the City, of the Langevin suit and 'of any other actions affecting or related to said system of sewerage or to any bid submitted by any other contractor.' " (Finding of fact No. 19.)

(The Langevin suit to which reference was made, was an action to restrain the city from proceeding with the project which was dismissed September 14; motion for new trial denied September 26.)

Mr. Gostovich appeared at this meeting of the council and orally protested the provisional award to Pieler.

On October 12, Messrs. Thompson and Westin (the engineers employed by the city for this project) met with Mr. Gostovich in Yakima and endeavored to get him to reduce his bid price. This he refused to do unless a portion of the work was deleted from the job. They left a letter with him. The trial court found that in consequence of that meeting Mr. Gostovich should have known that he had no chance to get the contract—"that he had been dealt out." The significance of this date will become apparent when we come to a consideration of the trial court's disposition of the case.

The third date was October 19, which will be considered later.

Mr. Gostovich verified a complaint against the city on November 22, asking for $65,000 in damages for the failure to award the contract to him. The case was tried piecemeal in April, 1962, June, 1966, and July, 1966, with findings, conclusions and judgment being signed October 27, 1966.

The trial court made findings and conclusions that were favorable to Mr. Gostovich, including:

A. That the lateness of the Pieler bid "was a substantive matter going to the essence of the bid process and could not be excused or waived as an 'informality,' " and that the award, if made at all, should have been "to the lowest responsible bidder."

B. That the plaintiff had suffered damage through the unreasonable delay of the defendant in the selection of a contractor and in releasing plaintiff's bid bond.

C. Thirty days from August 18, 1961, was not an unreasonable period for review and consideration of the bids, but the period after September 18 until the evening of October 12, when plaintiff should have known from his meeting with Thompson and Westin in Yakima that he had no chance of obtaining the contract, was a period of unreasonable delay.

The trial court allowed $30 a day damages for the period from September 18 to and including October 12 (the date of the Yakima meeting), and gave the plaintiff judgment for $720.

The plaintiff appeals because he believes that the damages were inadequate.

The defendant city cross-appeals, contending that its awarding of the contract to Pieler was entirely within its rights, and that the plaintiff was not entitled to recover any damages.

The appeal was heard in this court January 20, 1969.

■ We appreciate fully that requiring public bidding on municipal contracts is "to prevent fraud, collusion, favoritism, and improvidence in the administration of public business, as well as to insure that the municipality receives the best work or supplies at the most reasonable prices practicable." *Edwards v. Renton,* 67 Wn.2d 598, 602, 409 P.2d 153, 157 (1965); 10 McQuillin, Municipal Corporations, § 29.29 (3d ed. rev. 1966).

We are aware, too, that the requirement of public bidding is for the benefit of property holders and taxpayers, and not for the benefit of the bidders; and such requirements should be construed with the primary purpose of best advancing the public interest. 10 McQuillin, Municipal Corporations, § 29.29 (3d ed. rev. 1966).

Although the primary purpose for the requirement of public bidding is for the protection of the general public, it is also recognized that another purpose is to provide a fair forum for those interested in undertaking public projects. If there are material irregularities in the bidding process, the municipality should not accept the offensive bid. It may, however, waive the irregularity as an informality in the bidding if the irregularity is not material. "The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders." *Duffy v. Village of Princeton,* 240 Minn. 9, 60 N.W.2d 27, 29 (1953). *See also* Comment, *Competitive Bidding—Public Construction Contracts in the State of Washington,* 39 Wash. L. Rev. 796, 798-99 (1964).

 In the instant case, the Pieler bid was in the mail 24 hours ahead of the time scheduled for the opening of the bids. There is not the slightest suggestion of fraud, collusion, or any possible undue advantage which accrued to Pieler by the failure of his bid to arrive in Richland in time for the bid opening. This was clearly a situation where the municipality was entitled to take advantage of the lowest bid, even though it had not been timely filed with the clerk. The "good faith and honesty" of the municipal authorities are not questioned here. See *Nielsen v. St. Paul*, 252 Minn. 12, 88 N.W.2d 853 (1958); *Townsend v. McCall*, 262 Ala. 554, 80 So.2d 262 (1955).

Mr. Gostovich had no basis for complaint because the Pieler bid was considered and accepted. We are, therefore, in disagreement with the trial court on that issue.

There remains, however, for consideration the questions of whether there was an unreasonable delay in awarding the contract and whether Mr. Gostovich's bid bond was retained for an unreasonable period of time as found by the trial court.

 We are also in disagreement with the trial court in its determination that it can shorten to 30 days the 60 days[3] which the city's invitation for bids reserves to it for the holding of all proposals.

The city had the right to hold all proposals 60 days from August 18. On the 60th day the city council met, but took no action. The city's attorney, by a letter of October 19, notified the plaintiff's attorney that the plaintiff had been released from any liability for a contract.[4] There is no contention that this letter was not received. We agree with the city that the plaintiff could have secured the return of his

---

[3] ". . . The City reserves the right to hold all proposals as binding for a period not to exceed 60 days after opening of bids." (See page 584 of this opinion.)

[4] The letter read:

"The West Richland Council took no action at the October 17th meeting. Consequently all of the bidders are released from any liability for a contract except Pieler Construction who have agreed to an extension of the time for entering into the contract. Please let me know if you have any questions."

bid bond at any time thereafter by asking for it. (The trial court found that after the meeting with Messrs. Thompson and Westin in Yakima on October 12, the plaintiff should have demanded the return of his bid bond.)

The Pieler bid was properly accepted and while plaintiff's bid bond should have been returned to him before November 10, any delay beyond the 60-day time limit was attributable to his failure to ask for it.

We do not comment on the delay[5] until November in actually awarding the contract, as the plaintiff was relying on the failure to return his bid bond as the basis for his damages.

Finding no basis for any recovery for the plaintiff, the city prevails on its cross-appeal and the judgment appealed from is set aside with instructions to enter a judgment of dismissal.

HUNTER, C. J., ROSELLINI and HALE, JJ., and ARMSTRONG, J. Pro Tem., concur.

---

[5]After the trial judge's excoriation of the damage done to Mr. Gostovich by the city's delay, we hestitate to think of the potential damage to him occasioned by the law's delay in finally (we hope) disposing of this 1961 controversy in 1969.