Earl S. KING and R. J. Cherrier,
Appellants,

v.

ALASKA STATE HOUSING AUTHORITY,
a public corporation, and J. L.
Johnston, Appellees.

No. 1613.

Supreme Court of Alaska.

July 27, 1973.

H. Russel Holland, of Holland & Thornton, Anchorage, for appellants.

Clifford J. Groh & William A. Greene, of Groh, Benkert & Greene, Anchorage, for appellee Alaska State Housing.

Richard L. McVeigh, Anchorage, for appellee J. L. Johnston.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

In December of 1970, appellee Alaska State Housing Authority (hereinafter ASHA) issued an Invitation for Proposals

for the sale and redevelopment of tracts G–1 and G–2 in the Eastchester Urban Renewal Project. Unsuccessful in their competitive proposal to purchase and redevelop tracts G–1 and G–2, Earl King and Rod Cherrier appeal from an involuntary dismissal of their suit to enjoin ASHA from conveying their tracts to the "successful" developer, appellee J. L. Johnston.

ASHA is a "public corporate authority" empowered to administer the Alaska Slum Clearance and Redevelopment Act.[1] AS 18.55.700 in conjunction with AS 18.55.540 authorizes ASHA to "sell, lease, exchange or otherwise transfer real property" in urban renewal areas, provided such transfer complies with an urban renewal plan approved by the governing body of the municipality in which the project is located.[2] The Anchorage City Council approved an urban renewal plan in 1964 for the project involved in the case at bar. Pursuant to this plan and governing regulations,[3] ASHA invited proposals for the sale and redevelopment of tracts G–1 and G–2 according to the "fixed price competition" method. Under this method, $126,000 was the fixed sale price of the land and ASHA's selection criteria emphasized economic feasibility, architectural quality, and planning aspects of redevelopment plans. The Redeveloper's Portfolio, containing materials necessary to submit proposals, advised prospective redevelopers that a good faith deposit equal to 5 percent of the

purchase price was to accompany the proposal unless submitted by a non-profit corporation, limited dividend corporation, or cooperative. The Portfolio also advised that ASHA would afford limited preferential consideration to proposals submitted by redevelopers who owned property in the project area at the time the city council approved the urban renewal plan.

Appellants were the only former owners among the five redevelopers who submitted proposals, and they notified ASHA of their intent to exercise their preference on tracts G–1 and G–2. ASHA received appellants' proposal, accompanied by a good faith deposit, before the March 1, 1971, deadline. However, while ASHA received Johnston's proposal before the deadline, he did not submit the required deposit until March 30. After meeting with each of the proposed redevelopers, the ASHA Board of Directors concurred in the recommendations of the Federal Housing Administration and the ASHA staff, selecting appellee Johnston's proposal as the best plan for redevelopment of tracts G–1 and G–2.

After receiving notification of ASHA's decision, appellants sought to enjoin the housing authority from conveying the property to Johnston and to have themselves declared entitled to purchase and redevelop tracts G–1 and G–2. Appellants based their claim on three theories: that they are entitled to the property by virtue of an absolute "preference right" as form-

1. For the full text of the Act, see AS 18.55.480–.960.

2. AS 18.55.700 authorizes ASHA to exercise all redevelopment powers in an urban renewal program, including the power to dispose of land.
   AS 18.55.540(a) provides in part:
   The authority may sell, lease, exchange or otherwise transfer real, property or any interest in real property in a redevelopment project area to a redeveloper for residential, recreational, commercial, industrial or other uses or for public use in accordance with the redevelopment plan, subject to those covenants, conditions and restrictions it considers in the public interest or to carry out the purposes of §§ 480–960 of this chapter. However, the sale,

lease, exchange or other transfer, or an agreement relating to it, may be made only after, or subject to, the approval of the redevelopment plan by the governing body of the municipality.

. . .
See also Beirne v. Alaska State Housing Authority, 454 P.2d 262, 265–266 (Alaska 1969).

3. See AS 18.55.540(b); RHA 7214.1, ch. 4, § 2 of the Urban Renewal Handbook of the United States Department of Housing and Urban Development. Federal regulations are pertinent since the redevelopment offer contemplated the construction of housing under the Section 236 program of the National Housing Act, 12 U.S.C. § 1701 et seq. (1938).

er owners; that Johnston's failure to submit a timely good faith deposit invalidated his proposal and required ASHA to reject it; and that ASHA abused its discretion in evaluation of appellants' proposal for redevelopment and purchase of the tracts in question. At trial at the close of appellants' case, the superior court granted appellees' motion for involuntary dismissal of the action "on the ground that upon the facts and the law the plaintiff has shown no right to relief." King and Cherrier appeal from this involuntary dismissal and attack the findings of fact on which it is based.

■ Resolution of the issues in this appeal rests in part upon interpretation of Alaska Civil Rule 41(b) which parallels Rule 41(b), Federal Rules of Civil Procedure, and which reads where pertinent as follows:

> After the plaintiff has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.* If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). (Emphasis added.)

Previous opinions of this court prescribe the standards trial judges should apply to resolve Rule 41(b) motions to dismiss. In Rogge v. Weaver,[4] this court said that Rule 41(b) motions should not "invariably"

be resolved by a weighing of the evidence, but rather

> where plaintiff has presented a prima facie case based on unimpeached evidence we are of the opinion that the trial judge should not grant the motion even though he is the trier of the facts and may not himself feel at that point in the trial that the plaintiff has sustained his burden of proof.[5]

We subsequently held that in deciding Rule 41(b) motions the plaintiff's evidence should be viewed in its most favorable light.[6] Further in Trusty v. Jones,[7] this court articulated two policy rationales supporting the *Rogge* prima facie rule:

> We believe the Rogge rule is more likely to achieve justice and reduce the number of appeals resulting from the application of Rule 41(b) than an interpretation permitting the judge to dismiss in close cases before he has heard both sides of the issues and has obtained a complete picture of the controversy.

Of the states which have adopted rules similar to Federal Rule 41(b), Alaska was the first to adopt the prima facie test.[8] However, the Supreme Courts of Florida and Wyoming have recently adopted the *Rogge* approach.[9] And commentators have concluded that *Rogge* is wholly consistent with the language of Rule 41(b).[10] Finally, because we find the policies behind *Rogge* as valid today as they were in 1962, we decline appellees' request to depart from the *Rogge* prima facie test in this case. With these principles in mind, we turn to appellants' three basic contentions in this appeal.

Employing alternative theories, appellants contend they presented a prima facie

4. 368 P.2d 810 (Alaska 1962), *noted in* 38 Wash.L.Rev. 422 (1963).

5. 368 P.2d at 813.

6. Correa v. Stephens, 429 P.2d 254, 256 (Alaska 1967).

7. 369 P.2d 420, 422 (Alaska 1962).

8. The federal courts unanimously follow the weighing of the evidence standard.

*See*, 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2371, at 224–226 (1971).

9. Tillman v. Baskin, 260 So.2d 509 (Fla. 1972); Arbenz v. Bebout, 444 P.2d 317 (Wyo.1968).

10. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2371, at 226 (1970).

case establishing their absolute preference right to purchase and redevelop tracts G–1 and G–2 because no other proposed redeveloper formerly owned property in the project area. We reject each of appellants' alternative theories going to this point.

■ In this regard appellants first contend that ASHA is estopped to deny them an absolute preference because they invested funds to construct a redevelopment proposal in reliance upon representations from William H. Foster, ASHA local Relocation Property Manager. Testimony established that in 1966 and 1968 William Foster informed appellants they would have the right to reacquire property in the project area, provided they offered to pay the price set by ASHA. Foster did not advise them that their preference rights would be contingent upon ASHA's exercise of discretion in "fixed price competition" situations, where criteria other than price determine the successful developer.

Foster's representations cannot bind ASHA, even if they "misled" appellants, because ASHA was not empowered to grant an absolute preference right to former owners in the Eastchester Project area.[11] Moreover, it is well established that all persons dealing with a public corporation, such as ASHA, are deemed to know its limitations.[12]

■ ASHA may sell property only in accordance with an approved urban renewal plan.[13] With respect to preference rights, the approved urban renewal plan for the Eastchester project provides:

Owners of property within the project area whose property is acquired by the Alaska State Housing Authority will be given *preferential consideration* as redevelopers in the project area, *if* the Alaska State Housing Authority in its sole discretion determines—all other things being equal—that such owner's proposal for redevelopment is equal to or superior to proposals of other developers. (Emphasis added.)

AS 18.55.540(d) also limits ASHA's power to afford preference rights to those situations which the governing body has approved and under "such rules, regulations, conditions and limitations as [ASHA] prescribes." Prior to issuing the Invitation for Proposals involved in this case, ASHA promulgated regulations pursuant to AS 18.55.540(d) applicable to the development of tracts G–1 and G–2. Those regulations included a provision identical to that in the urban renewal plan. Rather than grant an absolute preference right, these regulations and the urban renewal plan merely reflect concern that ASHA give some consideration to whether the redeveloper was a property owner in the project area. Under these regulations former owners receive this limited preference only when their proposals equal all others with respect to criteria set forth in the Redevelopers Portfolio.

■ Appellants base their second alternative theory for an absolute preference upon a claimed denial of equal protection

11. A public corporation cannot bind itself to any contract which is beyond the scope of its powers. E. g., In the Matter of the Application of Stephenson, 511 P.2d 136 (Alaska 1973). Weil & Assoc. v. Urban Renewal Agency of Wichita, 206 Kan. 405, 479 P.2d 875, 885 (1971); Whaly v. State, 438 P.2d 718, 720 (Alaska 1968). 10 E. McQuillin, The Law of Municipal Corporations, § 29.04, at 223 (3d ed. 1966); see State v. Clallam Bd. of County Commissioners, 77 Wash.2d 542, 463 P.2d 617, 621 (1970).

12. *E. g.*, State v. Clallam Bd. of County Commissioners, 77 Wash.2d 542, 463 P. 2d 617, 621 (1970); Dyson v. Dixon, 219 Ga. 427, 134 S.E.2d 1, 2 (1963); *see also* 10 E. McQuillin, The Law of Municipal Corporations, § 29.04, at 220–23 (3d ed. 1966).

13. AS 18.55.540(a); AS 18.55.700. *See also* Beirne v. Alaska State Housing Authority, 454 P.2d 262, 265–266 (Alaska 1969).

of the laws.[14] They assert that ASHA intended to afford more favorable preference rights to former owners submitting proposals to develop property in the Eastchester project other than tracts G–1 and G–2. And, they conclude that the Equal Protection Clauses of the Alaska and federal constitutions mandate that there be only one set of preference rights for the entire Eastchester project. This contention must be rejected because appellants have not demonstrated in what manner they were treated differently from other persons who formerly owned property within the project area. At the time ASHA invited proposals for the redevelopment of tracts G–1 and G–2, all former owners received equal treatment under the preference provisions then existing. Thus, appellants were afforded equal protection of the laws. We therefore hold that appellants failed to establish a prima facie case that they were entitled to an absolute preference right to purchase and redevelop tracts G–1 and G–2.

We next turn to appellants' contention that appellee Johnston's failure to submit the required deposit with his proposal compelled ASHA to reject his proposal as unresponsive. Appellees agree the evidence established: that Johnston was aware of his duty to file a deposit with his proposal unless he qualified as a non-profit corporation, limited dividend corporation, or cooperative;[15] that Johnston did not file a timely deposit because he attempted to qualify for a "limited dividend company" exemption; that Johnston did not qualify for the exemption since he filed the proposal in an individual capacity; and that Johnston delivered the deposit to ASHA on March 30, 1972, prior to the Board's consideration of proposals.

■ ■ According to the prevailing view, proposals for public contracts must substantially comply with all requirements contained in the invitation for proposals.[16] Thus all terms of ASHA's invitation became by implication part of a valid proposal, in order that competition among redevelopers remain equal. Consistent with this well established principle, courts hold that while a "material" variance from the invitation requires rejection of the proposal,[17] a "minor" variance does not require rejection of the proposal.[18] A variance is said to be material "if it gives the bidder a substantial advantage over other bidders, and thereby restricts or stifles competition."[19]

■■ Thus, to satisfy their burden of establishing that Johnston's failure to submit a timely deposit automatically invalidated his proposal, appellants had to prove he thereby gained a competitive advantage. One benefit flowing to Johnston from his tardy filing of the deposit was the right to continue using the $6,300 from March 1 to March 30. But appellants failed to present any evidence that Johnston converted the use of these funds into a more favorable redevelopment proposal. Moreover, ASHA's security interests in the deposit[20]

14. U.S.Const., Amend. XIV; Alaska Const., Art. I, § 1.

15. See, Invitation for Proposals, Redeveloper's Offer to Purchase, and Good Faith Deposit Information Sheet.

16. E. g., Hillside Twp. v. Sternin, 25 N.J. 317, 136 A.2d 265, 269 (1957) ; see Kelly v. Zamarello, 486 P.2d 906, 917–919 (Alaska 1971) ; Gostovich v. City of West Richland, 75 Wash.2d 583, 452 P.2d 737, 740 (1969). See also 10 E. McQuillin, The Law of Municipal Corporations, §§ 29.65, 29.78 (3d ed. 1966).

17. E. g., Parks v. City of Pocatello, 91 Idaho 241, 419 P.2d 683, 687 (1966) ; Gostovich v. City of West Richland, 75 Wash.2d 583, 452 P.2d 737, 740 (1969).

18. E. g., P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J.Super. 199, 152 A.2d 369, 371 (1959) ; see also Comment, Competitive Bidding—Public Construction Contracts in the State of Washington, 39 Wash.L.Rev. 796, 799 (1964).

19. 10 E. McQuillin, The Law of Municipal Corporations, § 29.65, at 397 (3d ed. 1966).

20. The deposit helps insure that the redeveloper will build the housing complex if ASHA accepts his proposal, since he forfeits the deposit if he does not enter the contract within 10 days of ASHA's acceptance.

were substantially protected since Johnston filed the $6,300 before the Board considered and accepted any proposal. Therefore, we agree with the superior court that the variance here in question was minor and that ASHA was not required to reject Johnston's proposal merely because the deposit was untimely submitted.[21]

Our decision in Kelly v. Zamarello[22] does not compel a different result. In *Kelly,* we held that the Alaska Department of Natural Resources had a "reasonable basis" for *rejecting* bids to lease certain lands because the bids were nonresponsive to the state's invitation. Applying *Kelly's* standard of review, we conclude that appellants failed to establish the absence of a "reasonable basis" for ASHA's decision not to reject Johnston's proposal. Indeed, ASHA had a reasonable basis in law for not rejecting Johnston's proposal because the competitive bidding scheme was not impaired and ASHA's security interests were protected by the deposit being filed before the Board considered the proposals.[23]

In their third argument, appellants contend they presented a prima facie case of ASHA's abuse of discretion in evaluating their proposal for purchase and redevelopment. They recognize ASHA has broad discretion to evaluate the relative merits of redevelopment proposals pursuant to AS 18.55.540(b), which provides in part that:

The authority may accept the redevelopment contract proposal it considers in the public interest and in furtherance of the purposes of [the Slum Clearance and Redevelopment Act] . . . .

Exercising its discretion, ASHA devised its criteria for evaluation and selection of redevelopment proposals, stating criteria which would determine the merits of proposals for tracts G–1 and G–2. Grouping the specific criteria into broader categories, ASHA staff and Federal Housing Administration personnel evaluated proposals according to planning, architectural quality, and economic feasibility. Numerical totals were assigned to evaluations of each category. And, as we have mentioned, former owners might receive preferential consideration if their proposals were equal to all others. The criteria evaluations were compared and recommendations made by ASHA and FHA. In turn these recommendations formed the basis of the selection ultimately made by the ASHA Board of Directors.

Appellants claim that ASHA abused its discretion in failing to evaluate earthquake risk, in judging aspects of the planning category, and in computing the numerical totals for planning and feasibility evaluations. They conclude that since their proposal, after correcting the alleged errors, was at least equal to any other proposal, ASHA should have afforded them preferential consideration as former owners and selected their proposal.[24]

---

21. We note that federal regulations governing the housing program under which ASHA offered tracts G–1 and G–2 advise state housing authorities to exercise sparingly their rights to reject proposals for failure to comply strictly with terms of the invitation. Urban Renewal Handbook RHA 7214.1, ch. 4, § 1.

Other courts in similar situations have concluded that public corporations are not required to reject a proposal simply because the security was untimely submitted or perfected. *E. g.,* Murdock Contracting Co. v. Verona, 47 N.J.Super. 102, 135 A.2d 352 (1957) ; Rockland Bus Lines, Inc. v. Board of Educ., 43 Misc.2d 1060, 252 N.Y.S.2d 712, 714 (1964).

22. 486 P.2d 906 (Alaska 1971).

23. Since we hold that Johnston's late filing of the deposit did not require ASHA's rejection, we find it unnecessary to decide whether the superior court findings of fact 16 and 18 are "clearly erroneous." It is sufficient to note that no evidence indicated that Johnston was acting in bad faith by failing to submit a timely deposit.

24. To the extent that one may quantify a comparison between the proposals of appellants and Johnston, the following represents ASHA's evaluations before adjustment for alleged errors.

|  | Appellants | Johnston |
|---|---|---|
| Feasibility | 112% | 99% |
| Architectural | 26 points | 22 points |
| Planning | 1160 points | 1430 points |

The parties agree that ASHA's evaluation and selection of redevelopment proposals can be set aside for abuse of discretion.[25] To establish such abuse, appellants must show that ASHA failed to evaluate each proposal substantially according to the criteria listed in the Redeveloper's Portfolio or that the objective facts did not reasonably support evaluations of listed criteria.[26] Under this standard of review, this court should not second-guess reasonable evaluations of complex housing criteria with which ASHA is intimately familiar.[27]

We believe appellants failed to demonstrate a prima facie case that ASHA abused its discretion in evaluating earthquake risk and most planning elements. On the other hand we conclude that appellants presented a prima facie case of such abuse in ASHA's treatment of one planning element and in ASHA's erroneous computation of the feasibility and planning evaluations.

ASHA's architect attempted to consider earthquake risk as an element of the architectural quality evaluation. But since no redeveloper provided sufficient information upon which the architect could base a specific numerical grade, he wrote the following on each proposal:

Evaluation of buildings regarding earthquake damage: Appears okay. (Not enough information given for review.)

ASHA's inability to assign a specific grade to earthquake risk does not deprive the overall architectural evaluation of a reasonable basis, since earthquake risk was only one of several criteria comprising the overall architectural evaluation. We are convinced that the remaining criteria, which were fairly considered, support the overall evaluation.[28] Moreover, even if ASHA's treatment of earthquake risk were considered to be error, appellants failed to demonstrate that such error prejudiced their proposal in comparison to others, since each proposal received identical treatment.

Appellants have also failed to demonstrate the absence of reasonable bases for evaluations of such planning elements as "private outdoor living space"; "adequacy of parking," "variety, size and height of building"; and "least circular raceway." While appellants' brief specifically challenges the assessment of private outdoor living space, they made no attempt at trial to shake ASHA's determination of this factor. With respect to variety of buildings, appellants concede that their plan contemplated all two-story buildings, while ASHA's staff Planner and Technical Director of Urban Renewal testified that appellee Johnston's proposal contained buildings varying in size and height. This difference between the proposals provides a rational basis for ranking Johnston's plan

---

25. *See, e. g.*, Housing Authority of Opelousas v. Pittman Constr. Co., 264 F.2d 695 (5th Cir. 1959) ; North County Dev. Corp. v. Massena Housing Authority, 65 Misc.2d 105, 316 N.Y.S.2d 894 (Sup.Ct. 1970). *See generally* 3A C. Antieau, Local Government Law § 30F.06 (1970).

Appellee ASHA has not objected to the initial review jurisdiction of the superior court, even though such jurisdiction was not predicated on a special statute, such as the Alaska Administrative Procedure Act, AS 44.62.560(a). In light of this record and possible questions as to whether this appeal seeks review of administrative *adjudication*, we proceed on the basis of AS 22.05.010 giving plenary jurisdiction over appeals from the superior court. Similar treatment was accorded in Kelly v. Zamarello, 486 P.2d 906 (Alaska 1971).

26. *See* 10 E. McQuillin, The Law of Municipal Corporations § 29.72 (3d ed. 1966).

27. This court has held that in certain areas of agency expertise the appropriate standard on review is whether the agency action had a reasonable basis. *See* Swindel v. Kelly, 499 P.2d 291, 298 (Alaska 1972) ; Kelly v. Zamarello, 486 P.2d 906, 911 (Alaska 1971) ; Pan Am. Petroleum Corp. v. Shell Oil Co., 455 P.2d 12, 21–22 (Alaska 1969).

28. Appellants have not challenged the following statement made by ASHA's architect on each proposal:

I might add I've spent approximately 4 to 5 hours total time on each proposal and consider this sufficient to arrive at a thorough architectural review based on the criteria given, and the preliminary proposals submitted.

ahead of appellants' on this point. Similarly, ASHA's Planner testified that Johnston provided for 1.25 parking spaces per housing unit while appellants provided for only 1.12 spaces per unit. This additional space justifies the 25 additional evaluation points scored by Johnston.[29] Finally, with respect to least circular raceway, appellants presented no evidence contradicting ASHA's testimony that Johnston's proposal had less such roadway than did appellants' plan.

However, we agree with appellants that ASHA's evaluation of "yards and space between buildings" and its incorrect computation of the overall planning evaluation require more justification than was presented during appellants' case in chief. Appellants' witness, a civil engineer, testified that their proposal provided several thousand square feet more yard space and green area than did the Johnston plan. ASHA's planner conceded that appellants might have provided more usable yard space than did Johnston, yet gave no reason for rating the two proposals equal with respect to this factor. Moreover, appellants pointed out during trial that ASHA had incorrectly computed their overall planning evaluation, scoring 1160 points when they should have received 1200 points. Correction of the scoring error and possible reevaluation of "yards and space between building" might not create equality between appellants and Johnston insofar as planning is concerned. But at the involuntary dismissal stage of proceedings, we are unwilling to say that these errors in the planning evaluation did not adversely affect appellants' proposal, especially when considered in combination with evidence of the critical error discussed below.

Appellants established that ASHA erroneously listed the economic feasibility ratio for their proposal as 112 percent when it should have been 99.35 percent. It is difficult to overstate the importance of the feasibility ratio, since Harold Grindle, Acting Director of ASHA, testified that any feasibility ratio exceeding 110 percent placed the proposal "outside the realm of feasibility."[30] Grindle's staff evaluation and recommendation, relied upon by the ASHA Board of Directors in selecting Johnston's proposal, contained the erroneous 112 percent ratio and indicated that Johnston's proposal was the most feasible. On the basis of this evidence, the Board might have concluded that appellants' plan was either not feasible or at least not as feasible as Johnston's proposal. In either case, the mathematical error would have adversely affected appellants' chances of being selected, when in fact both proposals were equally feasible.[31] The Board's decision would therefore be based upon considerations not supported by the evidence—an abuse of discretion.[32]

In order to avoid an involuntary dismissal, the appellants were not required to demonstrate the precise weight given by the Board to the incorrect feasibility ratio. While they weakened their case by not presenting such evidence, we conclude that appellants have met their prima facie burden by demonstrating that the Board's selection relied on the erroneous evaluation and recommendation prepared by the

29. Appellants presented a civil engineer who testified that appellants provided 10 more parking spaces than Johnston. But the significance of his testimony is decreased by the concession that he did not include driveway or street parking.

30. Mr. Grindle testified:
If my understanding is correct, . . . anything above a hundred and ten places it outside the realm of feasibility. Anything below that could be worked— or reworked, I should say, to the point

where it could be within the range of economic feasibility, and of course, lower than a hundred would be better than a hundred.

31. See note 25, supra.

32. It is well recognized that courts may vacate findings of an administrative body if upon the record as a whole it appears that a mistake has been made. E. g., Ng Yip Yee v. Barber, 267 F.2d 206, 209 (9th Cir. 1959).

ASHA staff.[33] The burden now shifts to appellees to show that the erroneous feasibility ratio did not materially affect the Board's decision.

The decision of the superior court is vacated and this case remanded for completion of the trial proceedings in accordance with the foregoing.[34]

FITZGERALD, J., not participating.

---

33. The Board's minutes stated:
   The Board concurred in FHA's recommendation and the ASHA staff's evaluation and recommendation of the best project development plan for the R-16 Eastchester Urban Renewal Low-Income Housing Project under Section 236 of the National Housing Act. The developer selected was J. L. Johnston of Indio, California.

34. In light of this disposition, we find it unnecessary to discuss appellants' contention that the superior court erred in denying their motion for a new trial.