Belknap
No. 92-330

MARBUCCO CORPORATION,
d/b/a GRANITE STATE GLASS

v.

CITY OF MANCHESTER

September 30, 1993

*Murphy, McLaughlin, Hemeon & Lahey, P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the plaintiff.

*McDonough & O'Shaughnessy, P.A.*, of Manchester (*William A. Grimes* on the brief and orally), for the defendant.

BATCHELDER, J. The plaintiff, Marbucco Corporation, d/b/a Granite State Glass (Granite State), was the low bidder on a municipal contract. It sued the defendant, the City of Manchester (the city), for money damages for failure to award it the contract. Granite State argues that the Superior Court (*Fauver*, J.) erred in ruling that "although violation of competitive bidding procedures may create a right to an equitable remedy or mandamus, it does not give rise to a claim for damages based upon the failure or refusal to accept such bid." We reverse and remand.

On August 30, 1990, the city issued a notice to bidders for the replacement of windows at the city's public library. The notice, as amended, provided that bids would be opened September 25, 1990, at 3:00 p.m. and that bids received after the stated date and time would not be accepted.

The instructions accompanying the notice stated the city's intent to award a contract to the lowest responsible bidder who complied with the requirements of the bidding documents. The city retained the right to reject any or all bids and to waive any informality or irregularity in any bid received. Substitutions were prohibited unless a written request was sent to the project's architect at least ten days prior to the deadline for receipt of bids.

The bid process called for a base bid and eight alternate bids, specified either as additions or deductions from the base bid. Granite State's bid, adjusted for the alternates selected by the city, totalled $142,370. Pro Con, Inc. (Pro Con), another prequalified bidder, did not specify whether its alternate #7 was an addition or a deduction and included an additional deduction, alternate #9, without explanation. Pro Con's adjusted conforming bid, assuming alternate #7 was to be deducted, was $158,947.

The day after the bids were opened, Pro Con sent a facsimile transmittal to the project's architect, clarifying that alternate #7 was a deduction and explaining that alternate #9 was "voluntary on our part and reflects a savings if you supply an exterior muttin [*sic*]

on [window types] I and H." The contract specifications called for true divided muntins on these windows.

Although the project's architect's "immediate response was not to accept the Pro Con bid because of the irregularity," he nevertheless recalculated Pro Con's bid, deducting alternate #9, and presented this information to the city. The result was $650 lower than Granite State's bid. The city decided to "waive the irregularity" in Pro Con's bid and awarded it the contract.

Granite State filed a petition for temporary and permanent injunction, declaratory relief, and common law damages, arguing that the city improperly rejected its bid. By order dated November 14, 1990, the Superior Court (*Murphy*, J.) denied Granite State's request for a temporary restraining order. Thereafter, the city filed a motion to dismiss the remaining damages action. The Superior Court (*Fauver*, J.) granted the motion to dismiss, ruling that a disappointed low bidder could not, as a matter of law, maintain an action against a municipality for failure to award a contract. This appeal followed.

■ "On an appeal from an order granting a motion to dismiss, the only issue raised is whether the allegations are reasonably susceptible of a construction that would permit recovery." *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985) (quotation omitted). We construe the facts and all reasonable inferences therefrom in a light most favorable to the plaintiff. *Id.*

■ We consider a question of first impression for this court: whether a disappointed low bidder on a municipal contract may recover money damages from the municipality for failure to award it the contract. The city contends that no contractual relationship exists between a disappointed low bidder and the municipality upon which a suit may be grounded.

■■ Competitive bidding for a municipal contract serves "to invite competition, guard against favoritism, improvidence, extravagance, fraud and corruption, and ... secure the best work or supplies at the lowest price practicable." *Gerard Construction Co. v. City of Manchester*, 120 N.H. 391, 396, 415 A.2d 1137, 1140 (1980) (quotation omitted). Where competitive bidding provisions are in force, "strict compliance with the municipal scheme is required; otherwise the contract award is void." *Id.* at 395, 415 A.2d at 1140.

■ As part of the municipality's obligation to protect the public interest and to avoid weakening public confidence in government, it

is required to treat all bidders fairly and equally. *See Irwin Marine, Inc. v. Blizzard, Inc.*, 126 N.H. 271, 275, 490 A.2d 786, 790 (1985). "Consequently it is essential that the bidders, so far as possible, be put on terms of perfect equality, so that they may bid on substantially the same proposition, and on the same terms." 10 E. MC-QUILLIN, MUNICIPAL CORPORATIONS § 29.52, at 436 (3d ed. rev. 1990).

██ The city argues that because it had no contractual relationship with Granite State, no contract remedy is available. We agree that an invitation to bid on a public contract is not an offer. Rather, the bid itself is an offer that creates no right until it is accepted. 1 S. WILLISTON, CONTRACTS § 31, at 82 (3d ed. 1957). However, Granite State's reasonable reliance on the city's promise, if it awarded the contract at all, to award it to the lowest responsible bidder submitting all essential information prior to the bidding deadline, could entitle Granite State to damages under the theory of promissory estoppel. *See Owen of Georgia, Inc. v. Shelby Cty.*, 648 F.2d 1084, 1094–96 (6th Cir. 1981); RESTATEMENT (SECOND) OF CONTRACTS § 90, at 242 (1979). Hence, the city's argument that Granite State cannot prevail in contract fails.

█ When the facts and all reasonable inferences therefrom are construed in a light most favorable to the plaintiff, *Collectramatic, Inc.*, 127 N.H. at 320, 499 A.2d at 1000, it appears that the error in this case arose in the inclusion of alternate #9, an option proposed by Pro Con itself and not available to any of the other bidders. Alternate #9 went beyond the bounds of a mere informality or irregularity. Consequently, the city's award of the contract to Pro Con, based on an alternate not offered to the other bidders, was improper.

We must now determine whether money damages are an appropriate remedy. Although we acknowledge that the majority of courts have held that damages may not be recovered for rejection of the lowest bid, *see generally* Annotation, *Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency for Nonaward of Contract*, 65 A.L.R. 4TH 93 (1988), we find the authority that allows the award of damages to be better reasoned.

█ The policy reason for denying money damages to the unsuccessful low bidder is that taxpayers should not have to pay twice, once for the contract and again in damages. *See id.* § 2[a], at 99. We find this rationale unpersuasive. An award of money damages would be in the public interest because it would deter such misconduct by public entities in the future. Municipalities are generally subject to

the same financial consequences for their misconduct as private corporations. *Cf. Gardner v. City of Concord*, 137 N.H. 253, 256, 624 A.2d 1337, 1339 (1993) (discussing the abrogation of municipal immunity in tort). No reason exists to insulate the city from the award of damages in this case.

■■ Having held that money damages are appropriate for wrongful failure to award a contract to the lowest responsible bidder, we must determine the appropriate measure of those damages. In the ordinary case, the damages that an unsuccessful low bidder may recover should be limited to those it sustained directly by reason of its justifiable reliance upon the municipality's promise to award the contract to the lowest responsible bidder submitting all essential information prior to the bidding deadline, if it awarded it at all. Hence, damages ordinarily should be limited to the expenses incurred by the low bidder in its fruitless participation in the competitive bidding process, *i.e.*, its bid preparation costs. *See Paul Sardella Construction Co. v. Braintree Housing Authority*, 371 Mass. 235, 243, 356 N.E.2d 249, 254 (1976). To permit the recovery of greater damages in such cases could drain the public fisc in response to mere carelessness on the part of low level government officials. If a disappointed low bidder complies with all requirements of the bid instructions but is deprived of the contract through some conduct of the awarding authority tantamount to bad faith, however, then the recovery of lost profits should be the measure of damages. *See Peabody Const. v. City of Boston*, 546 N.E.2d 898, 902 (Mass. App. Ct. 1989). The greater deterrence resulting from an entitlement to lost profits is justified when bad faith is proven because a municipality's bad faith undermines the purpose of competitive bidding. No contractor would bid at all if it knows that "the deck [is] stacked against" it, *Owen of Georgia, Inc.*, 648 F.2d at 1095, and public confidence in government is eroded when municipal officials act in bad faith.

Construing all facts and reasonable inferences therefrom in the light most favorable to Granite State, we hold that the trial court erred in ruling that Granite State was not entitled to maintain its action against the city for money damages. Accordingly, we reverse and remand.

*Reversed and remanded.*

All concurred.