**UNITED STATES, Appellee,**

v.

**Jesus PAREDES–RODRIGUEZ,
Defendant, Appellant.**

**No. 97–1360.**

United States Court of Appeals,
First Circuit.

Heard May 6, 1998.

Decided Nov. 6, 1998.

Stewart T. Graham, Jr., by appointment of the Court, with whom Graham & Graham was on brief, for appellant.

Ariane D. Vuono, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN and BOWNES, Senior Circuit Judges.

TORRUELLA, Chief Judge.

Jesús Paredes–Rodríguez was convicted on charges that he conspired to possess cocaine with intent to distribute, and that he carried a firearm in connection with drug trafficking. He was sentenced to 121 months in prison and five years of supervised release. He now appeals his conviction, claiming that the jury instructions were misleading, that the indictment was constructively amended by evidence that also constituted a prejudicial variance from the conduct charged in the indictment, and that two police officers were erroneously permitted to testify. We affirm his conviction.

## I. Background

On the evening of November 15, 1994, defendant-appellant Jesús Paredes–Rodríguez was driving a car down Merwin Street in Springfield, Massachusetts. He was accompanied by Carlos Antigua–Herrera,[1] who was sitting on the front passenger seat. The car was stopped by state law enforcement officers assigned to the U.S. Drug Enforcement Administration's Western Massachusetts Task Force, and both driver and passenger were arrested. During the arrest, Paredes attempted to draw a loaded .38 caliber semi-automatic pistol from his pockets, but was forcibly restrained from doing so. The officers searched the car, and found 119 grams of crack cocaine under the passenger's seat.

The arrest was not random. An undercover state police officer, Trooper Juan Colón, had negotiated for delivery of cocaine on three previous occasions with the main target of the investigation, a certain José Reyes, also known as Rafi. On October 12, October 18, and November 2, 1994, Rafi delivered crack cocaine to Colón at the same location on Merwin Street where Paredes was later arrested. During the first transaction, on October 12, Rafi brought the crack by him-

---

1. Antigua was originally prosecuted along with Paredes, but the government chose to dismiss the drug charges when he pled guilty to illegal re-entry of an alien. He was subsequently deported.

self and then sold it to Colón. On October 18, Rafi arrived alone without the crack, but a few moments later, an individual known as Flaco arrived carrying the cocaine that Rafi then sold to Colón. On November 2, Rafi again arrived alone and without the cocaine, entered Colón's car, and sat down on the front passenger seat. Soon afterwards, the appellant in this case, Paredes, walked by and handed Rafi through the car's open window a one-ounce package of crack cocaine that Rafi then sold to Colón for $750.

Paredes' arrest followed the fourth transaction between Rafi and Colón. On November 14, Rafi agreed to sell Colón four ounces of crack cocaine for $3,000. The following day, Rafi told Colón that at approximately 7:15 p.m., two people in a black Oldsmobile would arrive at the same location on Merwin street to deliver the crack. It was precisely 7:15 p.m. when Paredes and Antigua arrived at the designated location in their car, carrying 119 grams (approximately 4.2 ounces) of crack cocaine.

After his arrest, Paredes waived his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), admitted that he was delivering cocaine, and then led the arresting officers to the building where Rafi had given him the crack cocaine. However, Paredes subsequently retracted his confession and denied having taken part in or even having had knowledge of the drug transaction. He explained that he showed the police where Rafi lived merely because he was trying to be helpful. He also simultaneously asserted, inconsistently, that he had no knowledge of the cocaine that was found in his car, and that the cocaine belonged to Rafi. Paredes further stated that Rafi had given him the gun, and told him to deliver the gun and the car to a friend who would be waiting for him on Merwin Street. He admitted, however, that he had originally told the police that he found the gun under some leaves.

Paredes' trial before the U.S. District Court for the District of Massachusetts be-

gan on November 4, 1996, and continued until November 12. On that date, the jury returned a verdict finding Paredes guilty on all three counts of the indictment. On February 24, 1997, Paredes was sentenced as described above. Judgment was entered on February 25, and Paredes filed a notice of appeal on April 19, 1997.

## II. Analysis

### A. Jury Instructions

 If objections to the jury instructions have been properly preserved, we review the trial judge's choice of wording in the instructions only for abuse of discretion. *See United States v. Smith*, 145 F.3d 458, 460 (1st Cir.1998). In order to determine whether or not the court abused its discretion, we first " 'must look at the instructions in light of the evidence and determine whether they fairly and adequately submit the issues in the case to the jury.' " *Id.* (quoting *United States v. Mitchell*, 85 F.3d 800, 809 (1st Cir.1996)). Even if we find the instructions erroneous, any such errors that are not of constitutional magnitude are reviewed for harmlessness. *See* Fed.R.Crim.P. 52(a); *Koonce v. Pepe*, 99 F.3d 469, 473 (1st Cir. 1996).[2] Pursuant to harmless error review, "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Accordingly, "[w]e must address the instruction 'in the context of the instructions as a whole and the trial record,' and 'inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the [constitutional right to due process.]' " *Koonce*, 99 F.3d at 473 (quoting *Estelle*, 502 U.S. at 72, 112 S.Ct. 475) (other citations omitted).

 As noted earlier, Paredes was indicted on three counts: conspiracy to possess

---

2. Harmless error review does not apply to jury instructions that constitute a " 'structural defect[ ] in the constitution of the trial mechanism.' " *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)

(quoting *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Paredes does not argue, however, that any error in the instructions given in his trial was of constitutional magnitude.

cocaine with intent to distribute, possession of cocaine with intent to distribute, and carrying a firearm in connection with a drug-trafficking crime. Although he acknowledges that there was other evidence that could support his conviction on the conspiracy count, Paredes contends that the possession count was the cornerstone of the indictment because evidence that he was in possession of the cocaine was the strongest evidence for a conviction on the conspiracy and weapons counts.[3]

Paredes claims that, since the cocaine was found in a plastic bag beneath a towel underneath the front passenger seat, some distance from the reach of his outstretched hand, he could not be said to be in actual possession of the cocaine. In order to convict him on the possession count, he claims, the jury had to find that he was in constructive possession of the cocaine. However, Paredes objects to the court's wording of the instruction on constructive possession, specifically challenging the omission of any explicit mention of an intent requirement. He cites the relevant portion of the court's instructions: "If an individual has the ability to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item." He further contends that the subsequent instruction that possession must be knowing in order to be criminal does not cure the effect of the omission of an intent requirement, because it allegedly permits conviction of a person who knows that an item in proximity to him contains cocaine, even though that person does not intend to exercise control over the item.

 Assuming for the sake of argument that Paredes is correct that the evidence did not permit a finding that he was in *actual* possession of the cocaine, the first question before us is whether the district court's instructions to the jury, taken as a whole, correctly conveyed the law as to constructive possession. Paredes is correct in asserting that intent is an element of constructive possession, which "exists when a person 'knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others.'" *United States v. Torres–Maldonado,* 14 F.3d 95, 102 (1st Cir.1994) (quoting *United States v. García,* 983 F.2d 1160, 1164 (1st Cir.1993)). Upon examining the instructions as a whole, however, we find that, notwithstanding the absence of an explicit mention of an intent requirement, the same is implicit in the instructions.

Although the omission of an explicit reference to intent is a less than ideal way of explaining constructive possession to a jury, the other instructions given by the court helped substantially to prevent the prejudice adverted to by Paredes. For example, the court also instructed:

> The possession of a controlled substance cannot be found solely on the basis that the defendant was near or close to the controlled substance. Nor can it be found simply because the defendant was present at a scene where controlled substances were involved, or solely because the defendant associated with a person who controlled the substance where it was found.

This instruction, in combination with certain illustrative examples of constructive possession given by the court and subsequent instructions on the intent-to-distribute aspect of the crime charged, effectively conveyed the notion that the jury had to find that

---

**3.** We do not share Paredes' estimation of the relative importance of the evidence of possession to the conspiracy and weapons counts. There was more than sufficient independent evidence of a conspiracy for the jury to find that Paredes conspired with Rafi to possess cocaine with the intention of distributing it. For example, the jury heard testimony indicating that Rafi and Paredes were associates, that Rafi had sold cocaine to Trooper Colón on more than one occasion, that Colón identified Paredes as the courier who delivered the cocaine to Rafi during one of those transactions, that Paredes arrived with four ounces of cocaine at the place and time that Colón had arranged with Rafi for the delivery of four ounces of cocaine, and that Paredes confessed to police that he was delivering the cocaine on behalf of Rafi. There is also no question that Paredes possessed a gun at the time of his arrest, which would suffice to support a finding that he carried a firearm during the commission of a drug trafficking crime; namely, conspiracy to possess with intent to distribute. Thus, even if the conviction on the possession count were to be reversed, the conspiracy and weapons counts would stand.

Paredes' possession of the cocaine was knowing and intentional. As a prior panel of this court stated,

> [the appellant's argument] ignores the nature of the crime with which he was charged. In directing his entire argument at alleged error in the definition of 'possession,' the defendant forgets that he was charged not with simple possession, but possession with intent to distribute.... [His] argument is that the jury found he possessed [certain containers] without knowing they contained cocaine, but went on to find that he intended to distribute the cocaine that was in them. No reasonable jury could make such a finding.

*United States v. Hallock*, 941 F.2d 36, 43 (1st Cir.1991). Similarly, in the case before us, it simply makes no sense to assert that the same jury that found that Paredes intended to distribute the cocaine could have simultaneously found that he did not intend to possess it.

**B. The Indictment**

 Paredes raises two separate but related claims regarding the indictment. One is his claim that the charges were constructively and improperly amended by the admission of evidence that he delivered cocaine to Rafi on November 2, because that evidence allowed the jury to convict him of a conspiracy that was not charged in the indictment. The other is his argument that there was a fatal variance between the indictment and the proof offered by the government at trial. Reviewing both contentions for plain error,[4] we find them without merit.

 When an amendment of the indictment occurs in the middle of trial, it is considered *per se* prejudicial for a number of reasons: "to preserve the right of the person accused of an infamous crime to have a grand jury vote on the indictment, to prevent reprosecution for the same offense, and to protect the right of the accused to be informed of all charges," so as to be able to adequately prepare his defense. *United States v. Vavlitis*, 9 F.3d 206, 210 (1st Cir. 1993). A constructive amendment of the indictment "occurs when the charging terms of the indictment are altered, ... in effect, by prosecution or court after the grand jury has last passed upon them." *United States v. Dunn*, 758 F.2d 30, 35 (1st Cir.1985) (quoting *Gaither v. United States*, 413 F.2d 1061, 1071–72 (D.C.Cir.1969)); *see also Vavlitis*, 9 F.3d at 210. For example, an indictment is constructively amended by "a jury instruction which modifies the offense charged in the indictment, ... or the admission of evidence of an offense not charged by the grand jury." *Dunn*, 758 F.2d at 35.

Notwithstanding Paredes' contentions, the admission of evidence of the November 2 delivery did not constructively amend the indictment. The conspiracy count charged Paredes with participating in a conspiracy to possess cocaine with intent to distribute "on or around November 15, 1995." During trial, the government introduced evidence that Colón purchased cocaine from Rafi on three occasions prior to the November 15 transaction, and that Paredes acted as Rafi's courier on one of those occasions.

The problem with Paredes' argument is that it is based on a misconception of the scope of the conspiracy charged in the indictment. He does not question that the indictment charged him with conspiring with Rafi and others to possess and sell cocaine. He does argue, however, that because the indictment refers to a conspiracy "on or about November 15," the conspiracy charge is necessarily limited to the events that occurred

---

4. Paredes did not properly raise either claim before the district court. The argument was never made that there was a variance between the proof and the indictment. Moreover, although he did object to the admissibility of the testimony of his co-conspirator, the argument went only to admissibility under the rules of evidence, an argument that we discuss below. Prior to this appeal, however, Paredes had never argued that the evidence constituted a constructive amendment of the indictment. The argument has been forfeited, and, accordingly, we review only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Pursuant to this standard, "Court[s] of Appeals should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736, 113 S.Ct. 1770 (citations omitted).

on November 15, and therefore, that the evidence as to the other transactions is evidence of other, uncharged conspiracies. Unfortunately for his argument, this circuit has previously held that "the setting forth, in approximate form, of [a] date on in the indictment does not preclude the admission of evidence relating to events which occurred earlier." *United States v. Fisher*, 3 F.3d 456, 461 n. 12 (1st Cir.1993); *see also United States v. Bello–Pérez*, 977 F.2d 664, 669 n. 4 (1st Cir.1992). The evidence as to the earlier transactions is certainly relevant to the November 15 transaction, because it provides an explanation of his presence on Merwin Street on the day of his arrest. Furthermore, any potential prejudice was prevented by the district court's careful instruction to the jury— which we have no reason to fear was ignored by the jury—that the defendant was on trial only for the events of November 15, and none other.

The argument with regard to the alleged variance in proof is quite similar to the constructive amendment argument. "A variance occurs when the proof differs from the allegations in the indictment." *Vavlitis*, 9 F.3d at 210. However, "[a] variance is material and reversible only if it has affected the defendant's substantial rights ... to be informed of the charges and to prevent a second prosecution for the same offense." *Id.* Paredes claims that the evidence introduced at trial regarding the November 2 transaction created a prejudicial variance between the proof and the indictment. As noted above, however, the reference to approximate dates in an indictment is not binding and thus the scope of the indictment may cover prior events. *See Fisher*, 3 F.3d at 461 n. 12. Accordingly, the evidence as to the prior transactions between Rafi and Colón, and Paredes' participation in one of those transactions is not materially different from the conduct charged in the indictment.

Moreover, even assuming that the evidence of prior transactions was sufficiently different from the acts charged in the indictment to constitute a variance, the evidence did not prejudice Paredes' substantial rights. He was certainly able to prepare an adequate defense, since he was on notice that the government would seek to introduce such evidence. Additionally, any danger that Paredes could be convicted on the basis of the evidence of the November 2 transaction was sufficiently mitigated by the court's instruction to the jury that the evidence as to the earlier transactions should be considered only as evidence that might be probative of his participation in a conspiracy on November 15, and not as proof of his participation in an earlier conspiracy.

## C. Evidentiary Rulings

Paredes objects to the trial court's admission of Colón's testimony as to statements made by Rafi in his presence during their negotiations for the November 15 transaction. He also objects to the admission of the testimony of the law enforcement officer in charge of the investigation as to what was said to him by two other officers. Neither objection is well-founded.

Under Fed.R.Evid. 801(d)(2)(E), a defendant's coconspirator's statements are admissible if the prosecution proves to the trial judge by a preponderance of the evidence that there was a conspiracy, that the defendant was part of the conspiracy, and that the statements were made by the coconspirator during the course and in furtherance of the conspiracy.[5] *See Bourjaily v. United States*, 483 U.S. 171, 176, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *see also United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977) (explaining that under Fed.R.Evid. 104(a), trial judge rather than jury has duty to hear evidence and determine admissibility of coconspirator statements). Moreover, after some debate among the circuit courts of appeals, *see, e.g., Petrozziello*, 548 F.2d at 23 n.

---

**5.** Fed.R.Evid. 801(d)(2)(E) provides:

A statement is not hearsay if ... [t]he statement is not offered against a party, and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish ... the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered.

2, the Supreme Court declared that trial courts may consider any non-privileged evidence, regardless of its admissibility, in making Rule 801(d)(2)(E) determinations, *see Bourjaily,* 483 U.S. at 178–79, 107 S.Ct. 2775 (harmonizing Fed.R.Evid. 104(a) procedures and Rule 801(d)(2)(E) determinations).

■ Thus, for example, in determining whether or not to permit the introduction of evidence as to the statements of an alleged coconspirator, the trial judge may consider hearsay evidence, including the very coconspirator statement whose introduction is being sought. As the Court explained, "there is little doubt that a coconspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.* at 180, 107 S.Ct. 2775.

In the case before us, the district judge conducted a *Petrozziello* hearing during which he reviewed the available evidence, including but not limited to Colón's testimony as to what Rafi had stated. The court concluded that the government had established by a preponderance of the evidence that there had been a conspiracy, that Paredes and Rafi had been part of the conspiracy, and that Rafi's statements were made during and in furtherance of the conspiracy. In making its determination, the court emphasized Colón's testimony that Paredes handed Rafi the crack cocaine during the November 2 transaction, and the fact that Paredes was arrested while in possession of four ounces of crack cocaine at the time and place Rafi had said his courier would deliver four ounces of crack cocaine. We discern no error in the district court's determination.

Paredes' response is to raise, once more, the argument that the conspiracy charged did not include the prior transactions, but only the November 15 transaction, and thus, that Rafi's statements were made in the course of a prior conspiracy, and not the one

at issue. This is an argument we have considered and rejected above, and thus we merely repeat that the scope of the conspiracy charged in the indictment is broad enough to cover the earlier transactions between Rafi and Colón.[6]

■ Paredes also argues that the court erred in deciding to permit Sgt. Neil Maloney, the agent in charge of the investigation, to testify as to what other officers told him during the course of the investigation. Maloney testified that officers under his command told him that they saw someone leave Paredes' residence on Tilton Street in a brown Toyota, proceed to Belmont Street, where both driver and passenger exchanged the Toyota for a dark Buick, and then proceed Merwin Street driving the same Buick. Paredes objected to this testimony on hearsay grounds, but the judge overruled the objection, stating that he would allow the testimony for the limited purpose of explaining how the surveillance reports prompted Maloney to take subsequent action, rather than to establish the truth of the reports. Given that the Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Fed. R.Evid. 801(c), the court's ruling was not an abuse of discretion. Most importantly, any error would have been harmless, because Maloney's testimony as to the car switch was of only tangential importance to the ultimate issue of whether Paredes committed the acts he was charged with.

■ Finally, Paredes objects to the district court's decision to permit Maloney to testify as to Colón's out-of-court identification of Paredes, as well as the comments that Colón made at the time. Based on a photo taken of Paredes after his arrest on November 15, Colón identified him as the courier who delivered the crack during the November 2 transaction. Colón had testified earlier during the trial as to the same incident, and,

6. Even assuming for the purpose of argument that earlier transactions were not part of the same conspiracy charged in the indictment, the admission of hearsay evidence relating to those transactions was not reversible error because it is highly unlikely to have affected the outcome of

the trial. There was more than sufficient evidence of Rafi's arrangement of the November 15 transaction, and Paredes' participation in it, to allow the jury to find that he and Rafi had conspired to possess the four ounces of cocaine with the intention of distributing it.

**58**

according to Paredes, Colón's identification at trial was very shaky. Paredes thus claims that he was prejudiced by the admission of Maloney's testimony because its effect was to bolster Colón's identification. Rule 801(d)(1)(C), however, declares that "[a] statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person." *Cf. United States v. Owens,* 484 U.S. 554, 564, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (Rule 801(d)(1)(C) exception applicable to evidence of witness's prior identification of defendant, even though by the time of trial, witness was unable to remember identification).[7] Indeed, "[t]he premise for Rule 801(d)(1)(C) was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications," because of the problem of fading memories. *Id.* at 563, 108 S.Ct. 838. Thus, even assuming that Colón's identification of Paredes at trial was less emphatic than his earlier identification in the presence of Maloney, this would merely confirm the validity of the premise underlying Rule 801(d)(1)(C).

### III. Conclusion

For the reasons discussed above, we affirm the appellant's conviction.

---

**7.** Paredes also claims that the district court's ruling violated his Fifth Amendment right to confront the witnesses against him. *See* U.S. Const. amend. V. Not only was this argument not raised below, but on appeal, it was merely mentioned in one sentence in the appellant's brief. As we have stated on repeated occasions, arguments not adequately addressed in the briefs are forfeited. *See Martínez v. Colón,* 54 F.3d 980, 990 (1st Cir.1995). Furthermore, and in any case, the district court's ruling was not plainly erroneous because the use of prior identifications has long been held not to violate an accused's confrontation right. *See, e.g., United States v. Johnston,* 784 F.2d 416, 421 n. 5 (1st Cir.1986) (citing *Dunn,* 758 F.2d at 39).