USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1651

 MARBUCCO CORP., d/b/a GRANITE STATE GLASS,

 Plaintiff, Appellant,

 v.

 SUFFOLK CONSTRUCTION COMPANY, INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Paul J. Barbadoro, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 

 Matthew J. Lahey, with whom McLaughlin, Hemeon & Lahey, P.A.was on brief for appellant.
 Lawrence M. Edelman, with whom Sanders & McDermott, P.L.L.C. and Patricia M. Weathersby were on brief for appellee.

January 25, 1999

 
 

 CAMPBELL, Senior Circuit Judge. The principal issue in
this appeal is whether New Hampshire law requires a disappointed
bidder to demonstrate a private subcontractor's bad faith before
the bidder may recover lost profit damages under a theory of
promissory estoppel. The district court held that such a showing
was necessary in this case, and it instructed the jury accordingly. 
We find no error in the court's instructions and therefore affirm.
 Appellee Suffolk Construction Company, Inc., a
Massachusetts general building contractor, was awarded a contract 
to build a new sports arena for the University of New Hampshire. 
Suffolk invited nine glass suppliers to bid on a portion of the job
that required the fabrication and installation of some of the glass
products for the arena. Among these suppliers was Appellant,
Marbucco Corporation. Marbucco claimed that one of Suffolk's
agents had told Marbucco's Vice-President that Marbucco's bid would
be selected so long as it was the lowest. When Suffolk awarded the
subcontract to another glass supplier whose bid was higher than
Marbucco's, Marbucco sued in New Hampshire Superior Court, seeking
damages for its bid preparations costs and lost profits. 
 Suffolk removed the action to the district court based on
the parties' diversity of citizenship. By the time of trial,
Marbucco had abandoned its claim for bid preparation costs and
instead sought only lost profits, which it asserted to be
approximately $71,000. Upon conclusion of the evidence, the
district court provided the following instruction to the jury
regarding Marbucco's claim:
 The Plaintiff is making a claim for damages based on what
 is known as the doctrine of promissory estoppel. In
 order to prove a claim of promissory estoppel the
 plaintiff must [prove] by a preponderance of the evidence
 that, one: the defendant's employee made a promise to the
 plaintiff. Two: the defendant reasonably expected that
 its employee's promise would cause the plaintiff to act
 on the promise. Three: the plaintiff relied to its
 detriment on the defendant's promise. Four: the
 plaintiff's reliance on the promise was reasonable under
 the circumstances. And five: the defendant acted in bad
 faith.
 
 Marbucco contends that the district court erred in
instructing the jury that bad faith was a necessary element of its
claim, limited, as it was, to lost profits. It contends, based on
the Supreme Court of New Hampshire's decision in Marbucco v. City
of Manchester, 632 A.2d 522 (N.H. 1993), that New Hampshire law
requires a plaintiff seeking lost profits under a promissory
estoppel theory to prove a defendant's bad faith only if the
defendant is a municipality. We do not read City of Manchester as
necessarily so limited. In that case, the New Hampshire court
faced what it characterized as a question of first impression:
whether a disappointed low bidder on a municipal contract could
recover money damages from the municipality for failure to award it
the contract, and if so, what measure of damages. See id. at 524-
25. The court ruled that damages could be recovered, noting that
"[m]unicipalities are generally subject to the same financial
consequences for their misconduct as private corporations." Id. at
24 (citation omitted). Regarding the appropriate measure of
damages, the court stated:
 In the ordinary case, the damages that an unsuccessful
 low bidder may recover should be limited to those it
 sustained directly by reason of its justifiable reliance
 upon the municipality's promise to award the contract to
 the lowest responsible bidder submitting all essential
 information prior to the bidding deadline, if it awarded
 it at all. Hence, damages ordinarily should be limited
 to the expenses incurred by the low bidder in its
 fruitless participation in the competitive bidding
 process, i.e, its bid preparation costs. To permit the
 recovery of greater damages in such cases could drain the
 public fisc in response to mere carelessness on the part
 of low level government officials. If a disappointed low
 bidder complies with all requirements of the bid
 instructions but is deprived of the contract through some
 conduct of the awarding authority tantamount to bad
 faith, however, then the recovery of lost profits should
 be the measure of damages. 
 
 Id. at 525 (citations omitted). 
 Marbucco places special emphasis on this passage in
arguing that the bad faith requirement applies only when the
defendant is a municipality. This, we think, conflates merely one
rationale animating the City of Manchester decision with the
holding of the case itself. To be sure, the City of Manchestercourt noted certain concerns when a municipal defendant is sued for
failing to award a competitive bid, e.g., the possibility of
damages "draining the public fisc" or the municipality's eroding
the "public confidence in government . . . [by acting] in bad
faith." See id. But these concerns can be understood as relating
to the particular circumstances pertaining to that case, not as
essential ingredients of the legal principle being applied. The
legal basis of City of Manchester was, we believe, the court's
recognition -- regardless whether the subcontractor was a public or
private entity -- that bid preparation costs are the "ordinary"
remedy for a promissory estoppel claim, leaving lost profits for
exceptional cases where bad faith (or something akin to bad faith)
is proven. The New Hampshire court cited to the Restatement
(Second) of Contracts in support of its determination that
justifiable reliance could give rise to a promissory estoppel claim
in the case of a disappointed bidder. See Restatement (Second) of
Contracts, 90, comment d, illustrations 8 & 9; City of
Manchester, 634 A.2d at 524. The Restatement makes no distinction
in this aspect of the law between public and private entities. 
Indeed, it would be inconsistent with the court's earlier statement
that "[m]unicipalities are generally subject to the same financial
consequences for their misconduct as private corporations" to
require public and private subcontractors to prove different
elements to recover lost profits on a promissory estoppel claim. 
In short, City of Manchester does not deter, and in fact guides,
our view that the Supreme Court of New Hampshire, if faced with the
circumstances of this case, would authorize the court below to
require Marbucco to prove Suffolk's bad faith in order to recover
its lost profits. 
 As an alternative to ruling in its favor, Marbucco asks
us to certify the question to the Supreme Court of New Hampshire. 
It is inappropriate, however, to use certification "when the course
state courts would take is reasonably clear." Porter v. Nutter,
913 F.2d 37, 41 n.4 (1st Cir. 1990). Accordingly, we deny the
motion to certify. 
 We also discern no error in the wording of the court's
jury instruction on the definition of the term "bad faith." 
Black's Law Dictionary defines it as "the opposite of 'good faith,'
generally implying or involving actual or constructive fraud, or a
design to mislead or deceive another, or a neglect or refusal to
fulfill some duty or some contractual obligation, not prompted by
an honest mistake as to one's rights or duties, but by some
interested or sinister motive." Black's Law Dictionary (6th ed. 
1990), p. 139. The Supreme Court of New Hampshire has defined it
as an "intentional disregard of a duty or an intent to injure." 
Murphy v. Financial Development Corp., 495 A.2d 1245, 1250 (N.H.
1985). The court's instruction here was as follows: "A party acts
in bad faith if the party makes a promise with the knowledge that
the promise will not be fulfilled and with the intention of
inducing another to rely on the promise." We believe that this
instruction adequately summarized the concept of bad faith for
purposes of the present case -- i.e., one in which a disappointed
bidder is suing a subcontractor for failing to award it a contract. 

 Marbucco does not, in fact, question the correctness of
this instruction insofar as it goes. Rather, Marbucco wanted the
court to supplement the instruction with a follow-up instruction
allegedly more relevant to the case at hand. The requested follow-
up instruction provided, 
 if there was a promise to award the contract to the
 qualified low bidder, [and] that the defendant was aware
 that that promise had been made and thereafter for no
 reasonable or legitimate reason chose not to award the
 contract to [Marbucco] even though it was the lowest
 qualified bidder, [then] that conduct would constitute
 bad faith.
 
 It was, however, well within the trial judge's discretion
to determine how fact-specific and detailed an instruction to give
on this matter. Trial judges are in the best position to know when
to stop in the instructional process, there being a fine line
between adequate guidance and that which may confuse or unfairly
influence the jury. "Bad faith" having been adequately defined, we
are unable to say that the judge abused his ample discretion by
choosing not to dilate further on the subject. See United Statesv. Rule Industries, Inc., 878 F.2d 535, 543 (1st Cir. 1989)("The
trial court is not obligated . . . to use the precise words
proposed by one party in its instructions; it is sufficient if the
principle of law is correctly stated."); United States v. Paredes-
Rodriguez, 160 F.3d 49, 53 (1st Cir. 1998) (trial judge's choice of
wording in the instructions is reviewed only for abuse of
discretion). 
 Affirmed.
 Motion to Certify denied.